1

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    MICHELLE DEVITO, ET AL.,                Case No. 15-cv-04542-MMC

10                  Plaintiffs,

11          v.                               **ORDER GRANTING PLAINTIFF'S
                                             MOTION TO ENFORCE SETTLEMENT;
12   UNITED CREDIT SPECIALISTS               VACATING HEARING; DIRECTIONS
     RECOVERY, et al.,                       TO CLERK**
13
                   Defendants.
14

15       Before the Court is plaintiffs' "Motion to Enforce Settlement Agreement," filed

16  January 19, 2017.  Defendant Charles Turner ("Turner") has filed opposition, to which

17  plaintiffs have replied.  Having read and considered the papers filed in support of and in

18  opposition to the motion, the Court finds the matter suitable for determination on the

19  parties' respective written submissions, VACATES the hearing scheduled for March 3,

20  2017, and rules as follows.

21       "It is well settled that a district court has the equitable power to enforce summarily

22  an agreement to settle a case pending before it."  Callie v. Near, 829 F.2d 888, 890 (9th

23  Cir. 1987).  Summary enforcement, i.e., enforcing the agreement without conducting an

24  evidentiary hearing, is appropriate where the "material facts concerning the existence or

25  terms of a settlement agreement" are not in dispute.  See City Equities Anaheim, Ltd. v.

26  Lincoln Plaza Development Co. (In re City Equities Anaheim, Ltd.), 22 F.3d 954, 958 (9th

27  Cir. 1994).

28  //

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    Here, plaintiffs seek enforcement of a written settlement agreement titled

2  "Settlement Agreement and Release" ("Agreement").  (See Pls.' Mot. Ex. A.)  Under the

3  Agreement, Turner agreed to pay plaintiffs "a settlement sum of $5,000.00 (five thousand

4  dollars and zero cents) in good funds on or before September 30, 2016" and plaintiffs

5  agreed to "release and discharge" Turner, as well as the two other defendants remaining

6  in the above-titled case, from claims plaintiffs "asserted or could have asserted" in the

7  instant case.  (See id. Ex. A at 1.)  The Agreement also provides that "[i]n the event of

8  litigation relating to the subject matter of [the] Agreement, the non-prevailing party shall

9  reimburse the prevailing party for reasonable attorney fees and costs."  (See id. Ex. B at

10  2.)

11    In support of the instant motion, plaintiffs offer a declaration averring Turner has

12  not paid $2500 due under the Agreement (see Amador Decl. ¶¶ 3-6),[1] and that, at an

13  hourly rate of $300, the "total legal fees expended to enforce the [A]greement" are $825

14  (see id. ¶¶ 11, 12).  Relying thereon, plaintiffs seek judgment in their favor against Turner

15  in the total amount of $3325.

16    In his opposition, Turner does not contend the existence or terms of the

17  Agreement are in dispute, nor does he contend the claimed hourly rate or hours

18  expended by plaintiffs' counsel in an effort to enforce the Agreement are unreasonable.

19  Rather, Turner argues, the Court should deny plaintiffs' motion because plaintiffs' counsel

20  has "unclean hands."  (See Def.'s Opp. at 3.)  Specifically, according to Turner, plaintiffs'

21  counsel "shares a degree of responsibility as to why the settlement was not satisfied," in

22  that plaintiffs' counsel, in another action brought on behalf of a different plaintiff, sought

23  and obtained a "bank levy" to satisfy a judgment entered in the other action, which "bank

24  levy" was "attached to [Turner's] account," thus causing his bank account to be "frozen."

25  (See Def.'s Opp. at 2-3.)

26    Turner offers no evidence to support his contentions.  Nonetheless, the Court has

27  _____

28    [1]The Declaration of Robert Amador is attached to plaintiffs' motion as Exhibit B.

2

1  reviewed the docket of the other action identified by Turner, specifically, <u>Meyer v. Turner</u>,

2  Case 1:13-cv-00443 JCG, which action was filed in federal court in the Southern District

3  of Mississippi.[2]  According to the docket for said case, the district court, on November 18,

4  2015, entered judgment against Turner and in favor of the plaintiff in the amount of

5  $16,480 (<u>see</u> Case 1:13-cv-00443 JCG Doc. No. 49), after which the Clerk of Court, upon

6  motion filed by the plaintiff's counsel (<u>see id.</u> Doc. No. 56), issued, on November 9, 2016,

7  a Writ of Execution, which document directed Wells Fargo Bank to "cause to be paid the

8  balance" owed to the plaintiff under the judgment,[3] using Turner's "goods and chattels" in

9  Wells Fargo Bank's possession (<u>see id.</u> Doc. No. 59).  Thereafter, on November 28,

10  2016, Wells Fargo Bank filed a letter with the Clerk of Court acknowledging it had been

11  served with the writ and stating it was "providing the information [the Clerk of Court]

12  requested" (<u>see id.</u> Doc. No. 61), specifically, a check payable to the district court in the

13  amount of $2967.46 (<u>see id.</u> Doc. No. 62), which amount the Clerk of Court deposited in

14  its registry (<u>see id.</u>)  The docket indicates the funds submitted by Wells Fargo remain in

15  the district court's registry.

16      Under California law, "[t]he doctrine of unclean hands bars a plaintiff from relief

17  when the plaintiff has engaged in misconduct relating directly to the transaction

18  concerning which suit is brought."  <u>See</u> <u>California Bank & Trust v. Delponti</u>, 232 Cal. App.

19  4th 162, 167 (2014).[4]  Here, Turner fails to explain how plaintiffs' counsel, in seeking and

20  obtaining from the Clerk of Court the above-referenced writ of execution, engaged in

21

22
23      [2]The Court takes judicial notice of the docket of said action.  <u>See</u> <u>Rosales-Martinez v. Palmer</u>, 753 F.3d 890, 894 (9th Cir. 2014) (holding it is "well established that [a court] may take judicial notice of judicial proceedings in other courts").

24
25      [3]According to the Writ of Execution, the balance due, of as November 9, 2016, was $20,843.38, which sum consisted of the original judgment of $16,480, a subsequent award of attorney's fees in the amount of $4225, a process service fee of $55, and post-judgment interest in the amount of $83.38.  (<u>See</u> Doc. No. 59.)
26

27      [4]"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."  <u>Jeff D. v. Andrus</u>, 899 F.2d 753, 759 (9th Cir. 1989)
28

United States District Court
Northern District of California

1    misconduct, given that the relief counsel sought is expressly authorized under the

2    Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 69(a)(1).[5]  To the extent Turner

3    may be suggesting he is now precluded from paying the balance due under the

4    Agreement, such argument is unavailing, as Turner fails to show that all his assets were

5    deposited in the Wells Fargo Bank account he states remains frozen, let alone that any

6    such circumstance would entitle him to an order denying enforcement of the Agreement.

7         In sum, there is no dispute as to the existence and terms of the Agreement or that

8    Turner has not paid the remaining $2500 owed thereunder, and the Court finds Turner

9    has failed to support his contention that plaintiffs' counsel has engaged in misconduct.

10   Additionally, the Court finds the amount of hours expended to enforce the Agreement and

11   the hourly rate sought are reasonable.

12        Accordingly, plaintiffs' motion will be granted.

### CONCLUSION

14        For the reasons stated above, plaintiffs' motion to enforce the Agreement is

15   hereby GRANTED, and the Clerk of Court is hereby DIRECTED to enter judgment in

16   favor of plaintiffs and against Turner in the amount of $3325.

17        **IT IS SO ORDERED.**

19   Dated: February 27, 2017

     MAXINE M. CHESNEY
     United States District Judge

---

[5]Under Rule 69(a)(1), a "money judgment is enforced by a writ of execution" and the "procedure on execution . . . must accord with the procedure of the state where the court is located."  See Fed. R. Civ. P. 69(a)(1).  Turner does not contend the procedure by which the funds in his Wells Fargo Bank account were provided to the Clerk of Court was in violation of Mississippi procedural law.

4